# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California  90017

Luke L. Dauchot
To Call Writer Directly:
(213) 680-8348
ldauchot@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

October 31, 2007

**Via Electronic Mail**

Frederick A. Lorig
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:    *Teledyne v. Honeywell*, CDCA Case No. CV 06-0683-MMM (SHx)

Dear Fred:

Teledyne has asserted infringement claims against Honeywell under U.S. Patent No. 6,181,990 ("990"), and seven counts sounding in tort or contract, each premised on the same nexus of alleged facts.  From the onset of this litigation, Honeywell has questioned how Teledyne could in good faith go about making these allegations given the lack of facts to support them, and no satisfactory answer has ever been furnished to us.

Particularly troubling have been Teledyne's assertions against Honeywell's Zing/ECTM-DD.  On the one hand, Teledyne has stopped short of outright accusing the product.  On the other hand, Teledyne has *de facto* treated the product as accused, by submitting discovery requests about the product to Honeywell and Honeywell's customers, and accusing the product in the marketplace.  This conduct is improper and injurious to Honeywell's business.

In addition to maintaining these claims, Teledyne has also recently subpoenaed six of Honeywell's important customers – Boeing, Delta, Embraer, NetJets, Southwest Airlines and United Airlines – in circumstances that appear intended to do nothing more than harass these customers and disrupt Honeywell's business relationships with them.  Indeed, Teledyne has succeeded in disrupting at least one of these relationships at substantial cost to Honeywell.

Teledyne has now (1) disclosed all of its alleged trade secrets under California Code of Civil Procedure § 2019.210, (2) reviewed the current engineering specifications and source code for Honeywell's ECTM-DD product, and (3) inspected and tested a new and functioning ECTM-DD unit.  While we believe that Teledyne should have not have embarked on this course of harassment to begin with, we demand, under Fed. R. Civ. P. 11 and other grounds set forth below, that Teledyne dismiss with prejudice its trade secret-based claims against Honeywell and its patent claims against Zing / ECTM-DD.  We also demand that all party and third-party discovery requests on these subjects be withdrawn immediately.

Chicago        Hong Kong        London        Munich        New York        San Francisco        Washington, D.C.

Exhibit P
Page 58

Frederick A. Lorig
October 31, 2007
Page 2

### A. Teledyne's '990 Patent Claims Against Zing / ECTM-DD Are Objectively Baseless

Paragraph 32 of Teledyne's Complaint[1] asserts infringement on nothing more than information and belief:

> On information and belief, Honeywell has developed, or is currently developing, a system referred to as its Zing Intelligent Monitoring Network ("Zing") for wirelessly obtaining Honeywell engine data from a Honeywell TFE731 Digital Electronic Engine Controller. Discovery may reveal that Honeywell's Zing system also infringes one or more claims of Teledyne's '990 patent.

Teledyne did not know how Honeywell's Zing / ECTM-DD system operated before Teledyne filed either its Original or First Amended Complaint, and openly admits that Teledyne has been on a fishing expedition. Likewise, Teledyne's verified response to Honeywell's Interrogatory Number 9 states that Teledyne has had no good faith basis to assert infringement claims against Zing / ECTM-DD: "Discovery may also reveal that Honeywell's Zing Intelligent Monitoring Network ("ZING"), both separately and in conjunction with Honeywell's TFE731 Digital Electronic Engine Controller (or other such products), also infringe one or more claims of U.S. Patent No. 6,181,990." Teledyne's Infringement Contentions, which you served in response to Honeywell's Interrogatory Number 10, do not even mention Zing / ECTM-DD.

That Teledyne did not include Zing / ECTM-DD in its Infringement Contentions is understandable: the product could not infringe the '990 patent under any reasonable construction of several claim elements. As such, Teledyne's continued pursuit of this claim at this stage in the litigation is indefensible. Even worse is Teledyne's harassment of Honeywell's customers through service of subpoenas containing a total of 42 document requests specifically targeting information about Zing.[2] Such conduct amounts to an abuse of process, among other unlawful behavior.

As you know, the '990 patent is directed to a system for transferring flight data from an aircraft data acquisition unit to a flight operations center **"automatically upon landing," "when at least [a] second sensor senses the landing,"** or **"in response to" "a signal indicating a landing of the aircraft."** As you also know based upon your review of Honeywell's documents and your recent physical inspection of the unit, Zing / ECTM-DD neither transmits automatically or based on a landing sensor, nor does it transmit flight data. Rather, it transmits engine data from the engine control unit **after a crew member manually initiates** the transmission.

---

[1] Teledyne's Complaint, ¶32. Teledyne's First Amended Complaint, which has been filed but not entered, makes the same allegation.

[2] Requests 3, 6, 9, 12, 15, 18 and 21 in each of Teledyne's Third Party Subpoenas to Boeing, Delta, Embraer, NetJets, Southwest Airlines and United Airlines.

Frederick A. Lorig
October 31, 2007
Page 3

The layout of the control panel unit for the ECTM-DD could not make it any more plain that the unit initiates the data transmission using a "Push To Initiate" manual button:



**Figure 3** Layout of the Control Panel unit

HON00217536; *see also* HON00217546 ("Once the push to initiate button present on the control panel of ECTM-DD is pressed, ECTM data from DEEC's will be acquired."). And Honeywell's engineering specifications verify the maintenance and diagnostic functionality of the unit:

> The ECTM-DD is designed to collect **data from onboard Digital Electronic Engine Control (DEEC)** units on Honeywell TFE731 engines and transfer that information to a ground based data center while aircraft is on ground.

HON00217806.

We also point out that, in view of the extensive prosecution history regarding the very claim elements that take Zing / ECTM-DD beyond the scope of the '990 patent, Teledyne will not receive any equivalents for these elements. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1325 (Fed. Cir. 2007) ("[T]he surrender of subject matter during patent prosecution creates a presumption that the patentee is precluded from recapturing that subject matter through the doctrine of equivalents.")

Teledyne cannot, in good faith, maintain its position that Zing / ECTM-DD infringes or "may infringe" the '990 patent. We therefore demand that Teledyne dismiss its infringement claim against Zing / ECTM-DD. We also demand that Teledyne withdraw its subpoenas to any third parties, service of which was premised solely on the customer's activities with respect to Zing / ECTM-DD. We also demand that Teledyne withdraw each of its document requests regarding Zing / ECTM-DD to the remaining third parties.

If Teledyne does not promptly dismiss this claim, and when Honeywell prevails on it as we expect it will, please be advised that we will seek to recover Honeywell's costs and attorneys fees relative to this claim in accordance with 35 U.S.C. § 285. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) (when litigant is "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence."); *Forest Laboratories, Inc. v. Abbott Laboratories*, 339 F.3d 1324, 1330 (Fed. Cir. 2003) ("the pertinent inquiry is whether [Plaintiff] knew or should have known [its claims] were

Frederick A. Lorig
October 31, 2007
Page 4

baseless") (citing *Eltech*). Teledyne's harassment of Honeywell's customers will also provide objective evidence of Teledyne's bad faith.

### B. Teledyne's Trade Secret-Based Claims Lack Good Faith Basis

Teledyne's remaining claims for breach of contract, misappropriation, interference and misrepresentation (Claims 2-8) are all similarly based upon flawed allegations: Teledyne alleges (either in bad faith or with manifest disregard for the truth) that Honeywell (1) received "highly valuable trade secrets" from Teledyne and (2) breached an alleged obligation by using and disclosing the supposed trade secrets. (First Amended Complaint ¶¶ 45, 50-53, 58, 65, 74, 80 and 87.) Teledyne will not be able to support these allegations. Apart from whether Teledyne can bear its burden to prove that Honeywell misappropriated any information, Teledyne will not be able to show that it disclosed any information to Honeywell that was not already generally known.

#### 1. The Alleged Secret Information Was In The Public Domain

Teledyne's delay in making its § 2019.210 trade secret disclosures until August 2, 2007 was well-founded: many of the alleged "trade secrets" consist of product overviews cribbed from Teledyne's prior marketing efforts. The additional alleged trade secrets include high-level scheduling events (e.g., planning and testing phases) and non-specific budgetary and "ROM" cost estimates, most of which were responsive to – and inclusive of the information contained in – the detailed Request For Quotation that **Honeywell first provided to Teledyne** and others. Teledyne had also placed a substantial amount of its alleged "secrets" on its website and elsewhere in the public domain for the whole world to see.

If you had carefully reviewed Teledyne's public disclosures that occurred before the date of Honeywell's alleged misappropriation, we believe you would have correctly refrained from asserting the trade-secret based claims. For example, and without limitation, see Teledyne's document TYD0085693-709, a presentation to an airline dated **two years** before Teledyne's disclosures to Honeywell – not labeled "confidential" or otherwise indicating any confidential value – and containing essentially the same information contained in one of the only two documents that Teledyne provided to Honeywell with a confidentiality notice (TDY0000060-85). The remaining document that Teledyne provided to Honeywell with a confidentiality notice was, as noted above, largely a regurgitation of Honeywell's RFQ to Teledyne along with Teledyne's standard company information (TDY0000030-59).

#### 2. Teledyne Failed To Take Reasonable Steps To Protect Its Alleged Trade Secret Information

Not only did Teledyne disclose nothing of trade secret stature to Honeywell, but Teledyne also did not designate as "Confidential," "Proprietary" or otherwise the information that it disclosed to Honeywell in 2002-2003 and only now, five years later, deems confidential. As a matter of law, this failure precludes Teledyne from being able to show that its alleged trade

Frederick A. Lorig
October 31, 2007
Page 5

secret information was "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1 (2007); *see also In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 308 (Cal. App. 2002) (failure of defendants to provide alleged trade secret documents with confidentiality legend reasonably deemed by trial court as circumstantial evidence that defendants had not previously treated them as trade secrets). The same applies to Teledyne's August 2, 2007 laundry list of alleged oral disclosures, for which Teledyne failed to provide any confidentiality designation within the contractual 30 day notice period. (Confidential Disclosure Agreement, Ex. D to Teledyne's Original Complaint, ¶ 1.)

As with Teledyne's patent claim against Zing / ECTM-DD, Honeywell believes Teledyne's trade secret-based claims to be so devoid of merit that, if Teledyne does not dismiss the claims promptly, Honeywell will seek its attorney's fees and costs if, as we expect, Honeywell prevails on these claims. Cal. Civ. Code § 3426.4 ("If a claim of misappropriation is made in bad faith, ... the court may award reasonable attorney's fees and costs to the prevailing party.").

### C. Customer Harassment Constitutes Another §17200 Violation

Teledyne cannot lawfully resort to harassing customers as a litigation tactic. The harassment has damaged Honeywell. We learned on Friday that Honeywell's customer NetJets has put its Zing / ECTM-DD program with Honeywell on hold indefinitely as a direct consequence of Teledyne's subpoena. Again, Zing / ECTM-DD is not expressly accused nor reasonably subject to any claims.

Teledyne has the right to compete fairly in the market. But that is not what Teledyne is doing. Making false statements in the market about the scope of its intellectual property rights is unlawful. So is harassing customers under the pretense of rights that Teledyne does not have and claims that Teledyne is not asserting. We demand that this conduct end immediately.

Sincerely,

Luke L. Dauchot

cc:   Bob Krupka
      Ephraim Starr