



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/126,156 | 07/30/98 | GRABOWSKY | J | TET-1689 |

PM82/0209

ROBERT J PUGH
ALLEGHENY TELEDYNE INCORPORATED
1000 SIX PPG PLACE
PITTSBURGH PA 15222

| EXAMINER |
|---|
| GIBSON,E |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3661 | 7 |

DATE MAILED:    02/09/00

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

1- File Copy

| **Office Action Summary** | Application No. 09/126,156 | Applicant(s) GRABOWSKY ET AL. |
|---|---|---|
| | Examiner Eric M Gibson | Art Unit 3661 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

**A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.**

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

1) ☒ Responsive to communication(s) filed on *30 December 1999*.

2a) ☐ This action is **FINAL.**   2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-24,26-28 and 30-35* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☒ Claim(s) *26-28,30-32,34 and 35* is/are allowed.

6) ☒ Claim(s) *1-24 and 33* is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claims _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

11) ☒ The proposed drawing correction filed on *30 December 1999* is: a) ☒ approved  b) ☐ disapproved.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    a) ☐ All  b) ☐ Some * c) ☐ None of the CERTIFIED copies of the priority documents have been:

      1. ☐ received.

      2. ☐ received in Application No. (Series Code / Serial Number) _____ .

      3. ☐ received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. & 119(e).

**Attachment(s)**

14) ☒ Notice of References Cited (PTO-892)
15) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
16) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) *4* .

17) ☐ Interview Summary (PTO-413) Paper No(s). _____ .
18) ☐ Notice of Informal Patent Application (PTO-152)
19) ☐ Other: _____

Ex. C - 47

Application/Control Number: 09/126,156

Page 2

Art Unit: 3661

## DETAILED ACTION

### *Information Disclosure Statement*

The references listed on the Information Disclosure Statement filed on 11/12/1999 (paper # 4) have previously been cited in the first office action (paper #3), with copies provided. Therefore, they have already been considered and are crossed off on paper # 4.

### *Drawings*

The proposed drawing correction and/or the proposed substitute sheets of drawings, filed on 12/30/1999 have been approved.

Since allowable subject matter has been indicated, applicant is encouraged to submit formal drawings in response to this Office Action. The early submission of formal drawings will permit the Office to review the drawings for acceptability and to resolve any informalities remaining therein before the application is passed to issue. This will avoid possible delays in the issue process.

Applicant is reminded of the objections to the drawings made by the draftperson (PTO-948), attached to paper # 3.

### *Specification*

The amendment to the specification was not entered because the change was directed to page 9, line 9, instead of line 7. Therefore, the examiner has changed reference number "16", on page 9, line 7, to '45'.

Application/Control Number: 09/126,156                          Page 3

Art Unit: 3661

### *Claim Rejections - 35 USC § 112*

The rejections of claims 8-13, and 16 have been withdrawn as corrected by

amendment.

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 1, 4, 7, and 15-17 are rejected under 35 U.S.C. 102(b) as anticipated by

or, in the alternative, under 35 U.S.C. 103(a) as obvious over Bailey et al. (5,550,738).

As per claims 1 and 4, wherein the data transmission system comprises a

communications unit, a cellular infrastructure in communication with the

communications unit after the aircraft has landed, and a data reception unit in

communication with the cellular infrastructure, is anticipated by Bailey.  Bailey is

directed to a vehicle, an aircraft is considered to be a vehicle.  Bailey discloses a data

acquisition unit (vehicle data unit 16), comprised of a communications unit located on

the vehicle (cellular modem 43), the communication unit is in communication with a

cellular infrastructure (col. 2., lines 35-36).  Communication occurring after the aircraft

has landed therefore takes place on the ground as opposed to the air.  The data

transmission occurring after the aircraft has landed is in no way different from data

transmission occurring in any other land vehicle.  An airplane is a land vehicle, travelling

Ex. C - 49

Application/Control Number: 09/126,156                                    Page 4

Art Unit: 3661

via wheels, once it is on the ground. In Bailey, the communication is occurring on the

ground.  Furthermore, Bailey discloses a data reception unit (data reporting system 12)

in communication with the cellular infrastructure.

A per claim 7, wherein the system of claim 1 further includes a router, processor

in communication with the router, and a storage unit connected to the processor, in the

data reception unit, Bailey discloses these limitations in data reporting system 12.  In

column 5, lines 26–40, Bailey discloses a data reception unit including a router (45), a

processor (microprocessor 72), and a storage unit (disk drive 74).

As per claim 15, the previous rejections establish that Bailey discloses means for

transmitting data via a cellular infrastructure and means for receiving data from the

cellular infrastructure.  As stated previously, Bailey is directed to a vehicle, an aircraft is

considered to be a vehicle and communication occurring after the aircraft has landed

therefore takes place on the ground as opposed to the air.  In Bailey, the

communication is occurring on the ground.

As per claims 16 and 17, wherein the transmitting and receiving units contain

processors, refer to the above explanations regarding claim 7, which establishes that

Bailey discloses processors.

MPEP §2131.05 states that "arguments that the alleged anticipatory prior art is

'nonanalogous art' or 'teaches away from the invention' or is not recognized as solving

the problem solved by the claimed invention, [are] not 'germane' to a rejection under

Application/Control Number: 09/126,156                                     Page 5

Art Unit: 3661

section 102." *Twin Disc, Inc. v. United States*, 231 USPQ 417, 424 (Cl. Ct.

1986)(quoting *In re Self*, 671 F.2d 1344, 213 USPQ 1, 7 (CCPA 1982)).

This applies where the applicant argues that the anticipatory prior art is for a land

vehicle and the invention is for an aircraft.  When the aircraft is on the ground, it is a

land vehicle and data transmitted therefrom is treated no differently than data from any

other land vehicle.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims 8, 10, 12, 14, 18, and 19 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Bailey et al. in view of Farmakis et al. (US 5,714,948).

Claims 8, 12, and 14 include a data system for an aircraft comprising a digital

flight data acquisition unit in communication with at least one sensor.  Bailey discloses a

data acquisition unit (microprocessor-based vehicle data unit 16) in communication with

at least one sensor (26) in figure 2.  As stated previously, Bailey is directed to a vehicle,

an aircraft is considered to be a vehicle.  In column 5, lines 35-37, Bailey discloses a

serial interface (84) in communication with the processor of the data acquisition unit.

Ex. C - 51

Application/Control Number: 09/126,156                                    Page 6

Art Unit: 3661

Furthermore, Bailey discloses a plurality of cell channels in communication with the

serial interface in column 4, lines 17-20.  As stated previously, communication occurring

after the aircraft has landed therefore takes place on the ground as opposed to the air.

In Bailey, the communication is occurring on the ground.  Furthermore, the claims are

specifically directed to flight data and flight data acquisition units with regard to what

type of data is being transmitted.  However, the transmission of flight data is no different

than transmission of data for any other vehicle in that data relating to the vehicle is

being transmitted.  The transmission of the data is in no way effected by what type of

data it is.  If the vehicle were a train the data would be train data, if the vehicle were an

automobile the data would be automobile data, and here the vehicle is an aircraft and

the data is correspondingly aircraft data.  No special steps are implemented because

the data comes from an aircraft as opposed to any other vehicle.  Farmakis teaches that

aircraft data from an aircraft on the ground (col. 16, lines 45-55) is transmitted to an

ATC facility and that the systems used to communicate with the aircraft on the ground

can be used in vehicles such as ships, automobiles, railroads, submarines, etc. (col. 22,

line 63 -- col. 23, line 2).  It would have been obvious to one of ordinary skill in the art,

at the time of invention, to use the system and method of Bailey to specifically transmit

flight data related to an aircraft, as exemplified by Farmakis.

     As per claim 10, wherein the processor is a personal computer, see Bailey

column 5, line 27.

Application/Control Number: 09/126,156                                   Page 7

Art Unit: 3661

As per claim 19, the invention has been previously disclosed by Bailey in the
above rejections, with the exception of the step of processing the data to prepare for
transmission.  In column 4, lines 17-19, Bailey discloses breaking the data into
individual, self-contained packets.  This is considered to be processing the data in
preparation for transmission.  Furthermore, Farmakis teaches transmitting coded
signals or data to an ATC facility, including a header segment and an information
segment (col. 17, lines 1-10).  This is also considered to be processing of data.  It would
have been obvious to one of ordinary skill in the art, at the time of the invention, to
include processing the data in the invention, as taught by Bailey and further exemplified
by Farmakis.

Claim 20 is rejected under 35 U.S.C. 103(a) as being unpatentable over the
combination of Bailey and Farmakis in further view of Levine (US 5,890,079).  Bailey
and Farmakis disclose the invention as explained in the previous rejections.  The
combination does not teach receiving the data at a flight operations center.  Levine
teaches transmission of aircraft flight data to a central ground based processing station.
As seen in Figure 4 of Levine, the central ground based processing station includes air
traffic control and the aircraft manufacturer facility, any and all of which can be
considered a flight operations center.  It would have been obvious to one of ordinary
skill in the art, at the time of invention, to send the vehicle data to a flight operations
center, in order to allow the information to be stored remotely and analyzed by skilled
personnel, as explained in Levine (column 4, lines 17-28).

Claims 21-22 are rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of Bailey, Farmakis, and Levine as applied to claim 20 above, and further in view of Cleave (US 5,793,813). The combination discloses the invention as explained in the previous rejections of claim 20. The combination does not teach using the Internet or public switched telephone network (PSTN) to receive the data from the cellular infrastructure at the data reception unit. Cleave teaches in column 4, lines 44-47, the use of the Internet or PSTN coupled to the gateway to receive the information at the data reception unit in a data communications system. It would have been obvious to one of ordinary skill in the art, at the time of the invention, to provide the invention taught by the combination of Bailey and Levine with a connection to the Internet or PSTN in order to receive the data from the cellular infrastructure.

Claims 2-3 are rejected under 35 U.S.C. 103(a) as being unpatentable over Bailey in view of Cleave. Bailey et al. discloses the invention as explained in the previous rejections of claim 1. Bailey does not teach using the Internet or public switched telephone network (PSTN) to receive the data from the cellular infrastructure at the data reception unit. Cleave teaches in column 4, lines 44-47, the use of the Internet or PSTN coupled to the gateway to receive the information at the data reception unit in a data communications system. It would have been obvious to one of ordinary skill in the art, at the time of the invention, to provide the invention of Bailey et al. with a connection to the Internet or PSTN in order to receive the data from the cellular infrastructure.

Claims 5- 6 are rejected under 35 U.S.C. 103(a) as being unpatentable over Bailey in view of Averbuch et al. (US 5,901,142). Bailey discloses the invention as

Application/Control Number: 09/126,156                                    Page 9

Art Unit: 3661

explained in the previous rejections.  Bailey does not teach a cellular infrastructure with

an antenna, transceiver subsystem, and controller.  Averbuch teaches a cellular

infrastructure including an antenna, transceiver subsystem, and controller (figure 1).  It

is well known in the art that in order for a cellular communications system to operate it

must contain these items.  It would have been obvious to one of ordinary skill in the art,

at the time of invention, to include in the invention of Bailey the components of a cellular

system that are well known in the art, as shown by Averbuch, in order for it to function

properly.

Claim 9 is rejected under 35 U.S.C. 103(a) as being unpatentable over the

combination of Bailey and Farmakis as applied to claim 8 above, and further in view of

Averbuch.  The combination discloses the invention as explained in the previous

rejections.  The combination does not teach a cellular infrastructure with an antenna,

transceiver subsystem, and controller.  Averbuch teaches a cellular infrastructure

including an antenna, transceiver subsystem, and controller (figure 1).  It is well known

in the art that in order for a cellular communications system to operate it must contain

these items.  It would have been obvious to one of ordinary skill in the art, at the time of

invention, to include in the invention the components of a cellular system that are well

known in the art, as shown by Averbuch, in order for it to function properly.

Claim 11 is rejected under 35 U.S.C. 103(a) as being unpatentable over the

combination of Bailey and Farmakis as applied to claim 8 above, and in further view of

Harper, Jr. et al. (US 5,519,663).  The combination discloses the invention as explained

Application/Control Number: 09/126,156

Art Unit: 3661

in the previous rejections.  The combination does not teach that the processor may be an application specific integrated circuit (ASIC).  It is well know in the art to use an ASIC for specific applications.  Harper, Jr. demonstrates that using an ASIC is equivalent to using a microprocessor in column 5, lines 64–67. It would have been obvious to one of ordinary skill in the art, at the time of invention, to include in the invention the features of a processor that are well known in the art in order to allow better operation, as exemplified by Harper, Jr.

Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of Bailey and Farmakis as applied to claim 8 above, and in further view of Steiner (4,939,652).  The combination discloses the invention as explained in the previous rejections.  The combination does not teach that the processor has an I/O interface.  It is well known in the art to use an I/O interface connected to a processor to allow for the exchange of data with the processor.  Steiner shows this in column 6.  It would have been obvious to one of ordinary skill in the art, at the time of invention, to include in the invention the features of a processor that are well known in the art in order to allow better operation, as exemplified by Steiner.

Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over the combination of Bailey and Farmakis as applied to claim 19 above, and in further view of Krenzel (US 5,124,915).  The combination teaches the use of a cellular digital packet data network in the invention as previously explained.  The combination does not teach the use of compression or encryption in the data network.  Krenzel teaches compression/uncompression of data in column 3, lines 30–41, for the use in a data communication system.   It would have been obvious to one of ordinary skill in the art, at the time of the invention, to include in the invention the data

Application/Control Number: 09/126,156                    Page 11

Art Unit: 3661

compression/uncompression as taught by Krenzel in order to reduce the file size of the

data needed to be transmitted, increasing the speed of transmission.  Encryption, and

subsequent decryption at the receiving end, is well known in the art to provide additional

security for the transmission of data via a wireless system.   It would have been obvious

to one of ordinary skill in the art, at the time of the invention, to include data encryption

and decryption in the invention in order to provide additional security over a wireless

system.

    Claim 24 is rejected under 35 U.S.C. 103(a) as being unpatentable over the

combination of Bailey, Farmakis, and Krenzel as applied to claim 23 above, and in

further view of Steiner.  The combination teaches the invention as explained in the

previous claims including the use of disk drives for data storage. The combination with

Krenzel teaches the invention as explained in the rejection of claim 23.  The

combination does not teach acknowledging receipt of data.  Steiner teaches the

acknowledgment of receipt of data in column 9, lines 16-17, in a data packet

communication system.   It would have been obvious to one of ordinary skill in the art, at

the time of invention, to include in the combination the data acknowledgment receipt of

Steiner in order to ensure proper delivery of data through the system.

        Claim 33 is rejected under 35 U.S.C. 103(a) as obvious over Bailey in

view of Winslow (US 5,852,825).  Bailey does not teach writing a computer program to a

suitable medium to implement the steps of data exchange when the program is

executed by the processor.  The writing of programs stored on computer readable

media to implement specific functions is well known in the art.  Several programs exist

that are well know in the art of data transmission, refer to Winslow, column 4, lines 20-

29 for examples of data transmitting programs that are well known in the art.  Therefore,

Application/Control Number: 09/126,156                    Page 12

Art Unit: 3661

it would have been obvious to one of ordinary skill in the art, at the time of invention, to
write a program capable of implementing the recited steps as already present in Bailey,
as it is well known to write computer programs to implement specific applications, as
exemplified by Winslow.

### *Allowable Subject Matter*

Claims 26-28, 30-32 and 34-35 are allowed.

### *Response to Arguments*

Applicant's arguments filed 12/30/1999 have been fully considered but they are
not persuasive.

Bailey is relied upon to disclose a system and method for transmitting vehicle
data via a cellular infrastructure.  Since once an aircraft had landed it becomes a land
vehicle, there is no difference in transmitting data from an aircraft as opposed to
transmitting data from any other land vehicle.

Furthermore, the claims are specifically directed to flight data and flight data
acquisition units with regard to what type of data is being transmitted.  However, the
transmission of flight data is no different than transmission of data for any other vehicle
in that data relating to the vehicle is being transmitted.  The transmission of the data is
in no way effected by what type of data it is.  If the vehicle were a train the data would
be train data, if the vehicle were an automobile the data would be automobile data, and

Application/Control Number: 09/126,156                                 Page 13

Art Unit: 3661

here the vehicle is an aircraft and the data is correspondingly aircraft data.  No special

steps are implemented because the data comes from an aircraft as opposed to any

other vehicle.

### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Eric M Gibson whose telephone number is (703) 306-

4545.  The examiner can normally be reached on M-F.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, William Cuchlinski can be reached on (703) 308-3873.  The fax phone

numbers for the organization where this application or proceeding is assigned are (703)

305-7687 for regular communications and (703) 305-7687 for After Final

communications.

Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is (703) 308-

1113.

emg
February 2, 2000

MICHAEL J. ZANELLI
PRIMARY EXAMINER

| **Notice of References Cited** | | Application/Control No. 09/126,156 | | Applicant(s)/Patent Under Reexamination GRABOWSKY ET AL. | | |
|---|---|---|---|---|---|---|
| | | Examiner Eric M Gibson | | Art Unit 3661 | | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|
| ☐ | A | 5,519,663 | May. 1996 | Harper, Jr. et al. | 365 | 229 | ☒ | ☐ |
| ☐ | B | 5,714,948 | Feb. 1998 | Farmakis et al. | 340 | 961 | ☐ | ☐ |
| ☐ | C | | | | | | ☐ | ☐ |
| ☐ | D | | | | | | ☐ | ☐ |
| ☐ | E | | | | | | ☐ | ☐ |
| ☐ | F | | | | | | ☐ | ☐ |
| ☐ | G | | | | | | ☐ | ☐ |
| ☐ | H | | | | | | ☐ | ☐ |
| ☐ | I | | | | | | ☐ | ☐ |
| ☐ | J | | | | | | ☐ | ☐ |
| ☐ | K | | | | | | ☐ | ☐ |
| ☐ | L | | | | | | ☐ | ☐ |
| ☐ | M | | | | | | ☐ | ☐ |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | N | | | | | | | ☐ | ☐ |
| ☐ | O | | | | | | | ☐ | ☐ |
| ☐ | P | | | | | | | ☐ | ☐ |
| ☐ | Q | | | | | | | ☐ | ☐ |
| ☐ | R | | | | | | | ☐ | ☐ |
| ☐ | S | | | | | | | ☐ | ☐ |
| ☐ | T | | | | | | | ☐ | ☐ |

**NON-PATENT DOCUMENTS**

| * | | DOCUMENT (Including Author, Title Date, Source, and Pertinent Pages) | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|
| ☐ | U | | ☐ | ☐ |
| ☐ | V | | ☐ | ☐ |
| ☐ | W | | ☐ | ☐ |
| ☐ | X | | ☐ | ☐ |

*A copy of this reference is not being furnished with this Office action. (See Manual of Patent Examining Procedure, Section 707.05(a).)
**APS encompasses any electronic search i.e. text, image, and Commercial Databases.
U.S. Patent and Trademark Office
PTO-892 (Rev. 03-98)        Notice of References Cited        Part of Paper No. 7

Ex. C - 60



PATENT
TET-1689 (98118)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:                     :
    Grabowsky et al.                    :
                                         :
Examiner E. Gibson                       : AIRCRAFT FLIGHT DATA ACQUISITION
                                            AND TRANSMISSION SYSTEM
Art Unit 3661                            :
                                         :
Serial No.: 09/126,156                   :
                                         :    Group 3600
Filed:  July 30, 1998                    :

AMENDMENT AND RESPONSE TO OFFICE ACTION

Pittsburgh, Pennsylvania  15222
July 10, 2000

Assistant Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

    In response to the Office Action dated February 9, 2000, please amend the above-

identified application as follows:

In the Claims

    Please amend the claims as follows:

    1.  (Amended) An aircraft data transmission system, the aircraft having a data

acquisition unit, comprising:

    a communications unit located in the aircraft and in communication with the data

acquisition unit;

PI-559323.01

a cellular infrastructure in communication with said communications unit after the

aircraft has landed, wherein the communication is initiated automatically upon landing of

the aircraft; and

    a data reception unit in communication with said cellular infrastructure.

8.  (Twice Amended) A data system for an aircraft, comprising:

    a digital flight data acquisition unit in communication with at least one sensor;

    a processor in communication with said digital flight data acquisition unit;

    a serial card in communication with said processor; and

    a plurality of cell channels in communication with said serial card, said cell

channels for transmitting data via a cellular infrastructure after the aircraft has landed,

wherein the communication between the cell channels and the serial card is initiated

automatically upon landing of the aircraft.

14.  (Amended) An aircraft, comprising:

    a digital flight data acquisition unit in communication with at least one sensor;

and

    a communications unit in communication with said digital flight data acquisition

unit, said communications unit including:

        a processor in communication with said digital flight data acquisition unit;

        a serial card in communication with said processor; and

        a plurality of cell channels in communication with said serial card, said

cell channels for transmitting data via a cellular infrastructure after the aircraft has

2

landed, wherein the communication between the cell channels and the serial card is initiated automatically upon landing of the aircraft.

15. (Amended) An aircraft data transmission system, the aircraft having a data acquisition unit, comprising:

means for transmitting data from the data acquisition unit via a cellular infrastructure after the aircraft has landed, wherein transmission of the data is initiated automatically upon landing of the aircraft; and

means for receiving said data from said cellular infrastructure.

18. (Amended) A method of transmitting aircraft flight data from an aircraft, comprising:

receiving flight data from a data acquisition unit;

transmitting said flight data via a cellular communications infrastructure after the aircraft has landed, wherein the cellular communications infrastructure is accessed automatically upon landing of the aircraft; and

receiving said transmitted flight data.

19. (Amended) A computer-implemented method of transmitting aircraft flight data from an aircraft, comprising:

receiving flight data from a digital flight data acquisition unit;

processing said flight data to prepare said data for transmission; and

transmitting said processed data via a cellular infrastructure after the aircraft has landed, wherein the cellular infrastructure is accessed automatically upon landing of the aircraft.

3 

33. (Amended) A computer readable medium having stored thereon instructions

which when executed by a processor, cause the processor to perform the steps of:

BS

      receiving flight data from a digital flight data acquisition unit in an aircraft;

      processing said flight data to prepare said data for transmission; and

      transmitting said processed data via a cellular infrastructure when said aircraft has

landed, wherein the cellular infrastructure is accessed automatically upon landing of the

aircraft.

## REMARKS

      At the outset, Applicants and the undersigned would like to express their

appreciation to Examiners Zanelli and Gibson for the courtesies extended at the personal

interview of July 6, 2000. Applicants also express their appreciation to the Examiner for

the allowance of claims 26-28, 30-32, 34, and 35.

      In the Office Action, the Examiner rejected claims 1, 4, 7, and 15-17 as being

anticipated by, or in the alternative obvious over, U.S. Patent No. 5,550,738 to Bailey et

al. The Examiner rejected claims 8, 10, 12, 14, 18, and 19 as being obvious over Bailey

et al. in view of U.S. Patent No. 5,714,948 to Farmakis et al. The Examiner rejected

claim 20 as being obvious over Bailey and Farmakis in further view of U.S. Patent No.

5,890,079 to Levine. The Examiner rejected claims 21-22 as being obvious over Bailey,

Farmakis, and Levine and in further view of U.S. Patent No. 5,793,813 to Cleave. The

Examiner rejected claims 2-3 as being obvious over Bailey in view of Cleave. The

Examiner rejected claims 5-6 as being obvious over Bailey in view of U.S. Patent No.

4 

5,901,142 to Averbuch. The Examiner rejected claim 9 as being obvious over Bailey and Farmakis in further view of Averbuch. The Examiner rejected claim 11 as being obvious over Bailey and Farmakis in further view of U.S. Patent No. 5,519,663 to Harper, Jr. et al. The Examiner rejected claim 13 as being obvious over Bailey and Farmakis in further view of U.S. Patent No. 4,939,652 to Steiner. The Examiner rejected claim 23 as being obvious over Bailey and Farmakis in further view of U.S. Patent No. 5,124,915 to Krenzel. The Examiner rejected claim 24 as being obvious over Bailey, Farmakis, and Krenzel in further view of Steiner. The Examiner rejected claim 33 as being obvious over Bailey in view of U.S. Patent No. 5,852,825 to Winslow. Applicants respectfully traverse these rejections as follows.

The primary reference used to reject claims 1-24, 26-28, and 30-35 is Bailey. Applicants have herein amended independent claims 1, 8, 14, 15, 19, and 33. As discussed at the July 6 interview, the Examiner has agreed that, in view of the amendments, those claims are not anticipated by Bailey. *See* Examiner Interview Summary Record dated July 6, 2000.

However, the Examiner expressed that a "detailed reading of Farmakis" would be required prior to allowance of the rejected claims. Applicants submit that the rejected claims are not anticipated by nor obvious in view of Farmakis, either solely or in combination with other references. Farmakis is directed to a satellite-based system for tracking and control of aircraft. The system is used for, among other purposes, communications between aircraft on the ground and an air traffic control facility via satellite, cell telephone, or HF/VHF/UHF radio to track the surface movement of the

5 

aircraft and to detect the position of the aircraft on the ground.  *See* Farmakis, col. 16, lines 35-62.  The system disclosed in Farmakis replaces or supplements verbal communications between an aircraft and an air traffic control facility with coded segments and/or data after the aircraft has landed.  Such communications can include, for example, a request for closure of an aircraft's flight plan.  Farmakis states that such a request can be made manually by the pilot or automatically in response to lowering the landing gear.  *See* Farmakis, col. 20, lines 5-27.

Farmakis does not disclose, among other elements, "a cellular infrastructure in communication with said communications unit after the aircraft has landed, wherein the communication is initiated automatically upon landing of the aircraft" as claimed in claim 1, "a plurality of cell channels in communication with said serial card, said cell channels for transmitting data via a cellular infrastructure after the aircraft has landed, wherein the communication between the cell channels and the serial card is initiated automatically upon landing of the aircraft" as claimed in claims 13 and 14, "means for transmitting data from the data acquisition unit via a cellular infrastructure after the aircraft has landed, wherein transmission of the data is initiated automatically upon landing of the aircraft" as claimed in claim 15, "transmitting said flight data via a cellular communications infrastructure after the aircraft has landed, wherein the cellular communications infrastructure is accessed automatically upon landing of the aircraft" as claimed in claim 18, "transmitting said processed data via a cellular infrastructure after the aircraft has landed, wherein the cellular infrastructure is accessed automatically upon landing of the aircraft" as claimed in claim 19, or "transmitting said processed data via a cellular

6 

infrastructure when said aircraft has landed, wherein the cellular infrastructure is accessed automatically upon landing of the aircraft" as claimed in claim 33. Thus, Applicants submit that independent claims 1, 8, 14, 15, 18, 19, and 33, and depended claims 2-7, 9-13, 16-17, and 20-24 which depend therefrom, respectively, are in condition for allowance.

<u>CONCLUSION</u>

For the reasons stated herein, a Notice of Allowance for all pending claims is earnestly requested. If the Examiner is of the opinion that the instant application is in condition for disposition other than allowance, the Examiner is respectfully requested to contact Applicants' attorney at the telephone number listed below in order that the Examiner's concerns may be expeditiously addressed.

Respectfully submitted,

Jonathan C. Parks
Attorney for Applicants
Reg. No. 40,120 .

Kirkpatrick and Lockhart, LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
(412) 355-6288

7

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 09/126,156 | GRABOWSKY ET AL. |
| | Examiner | Art Unit |
| | Eric M Gibson | 3661 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

1. ☒ This communication is responsive to *7/10/2000*.

2. ☒ The allowed claim(s) is/are *1-24,26-28 and 30-35*.

3. ☐ The drawings filed on _____ are acceptable.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).
   a) ☐ All    b) ☐ Some*   c) ☐ None    of the CERTIFIED copies of the priority documents have been
   1. ☐ received.
   2. ☐ received in Application No. (Series Code / Serial Number). _____.
   3. ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____.

5. ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. & 119(e).

A SHORTENED STATUTORY PERIOD FOR REPLY to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" of this Office Action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be available under the provisions of 37 CFR 1.136(a).

6. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

7. ☒ Applicant MUST submit NEW FORMAL DRAWINGS
   (a) ☐ because the originally filed drawings were declared by applicant to be informal.
   (b) ☒ including changes required by the Notice of Draftsperson's Patent Drawing Review( PTO-948) attached
       1) ☐ hereto or 2) ☒ to Paper No. *3*.
   (c) ☒ including changes required by the proposed drawing correction filed *12/30/1999*, which has been approved by the examiner.
   (d) ☐ including changes required by the attached Examiner's Amendment / Comment.

   Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.

8. ☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any reply to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE / SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

Attachment(s)
1☒ Notice of References Cited (PTO-892)                    2☐ Notice of Informal Patent Application (PTO-152)
3☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)   4☐ Interview Summary (PTO-413), Paper No.____.
5☐ Information Disclosure Statements (PTO-1449), Paper No. ____.   6☐ Examiner's Amendment/Comment
7☐ Examiner's Comment Regarding Requirement for Deposit       8☒ Examiner's Statement of Reasons for Allowance
   of Biological Material                                     9☐ Other

WILLIAM A. CUCHLINSKI, JR.
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 3600

U.S. Patent and Trademark Office
PTO-37 (Rev. 3-98)                         Notice of Allowability                    Part of Paper No. 12.

Application/Control Number: 09/126,156                           Page 2
Art Unit: 3661

### Reasons for Allowance

1.    Claims 1-24, 26-28, 30-35 are allowed.

2.    The following is an examiner's statement of reasons for allowance:

3.    Claims 1, 8, 14, 15, 18, 19 and 33 are found to be allowable over the prior art because the use of the existing cellular infrastructure in the transmission of the data from the aircraft to the flight operations center defines over the prior art. In existing systems, an airport specific wireless communication system is used for the transmission of data (see applicant's specification, page 2, lines 3-15). The use of an existing cellular infrastructure to transmit the data results in a significant cost savings over the systems of the prior art (see applicant's specification page 2, line 24 – page 3, line 1).

4.    Claims 2-7, 9-13, 16-17 and 20-24 server to further define the invention over the prior art.

5.    Claims 26-28, 30-32 and 34-35 were indicated as allowed in the Office Action dated 2/9/2000.

6.    Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### Conclusion

7.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. An updated search revealed Wright et al. (US 6,047,165). Wright teaches a wireless, frequency-agile spread spectrum ground link-based aircraft

Application/Control Number: 09/126,156                                 Page 3
Art Unit: 3661

data communication system. In the system taught by Wright, aircraft data is wirelessly

downloaded via an airport specific RF communications system, upon landing of the

aircraft.

8.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Eric M Gibson whose telephone number is (703) 306-

4545. The examiner can normally be reached on M-F.

9.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, William Cuchlinski can be reached on (703) 308-3873. The fax phone

numbers for the organization where this application or proceeding is assigned are (703)

305-7687 for regular communications and (703) 305-7687 for After Final

communications.

10.     Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is (703) 308-

1113.

EMG
August 23, 2000

WILLIAM A. CUCHLINSKI, JR.
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 3600

FILE COPY

| **Notice of References Cited** | | Application/Control No. | | Reexamination | |
|---|---|---|---|---|---|
| | | 09/128,156 | | GRABOWSKY ET AL. | |
| | | Examiner | | Art Unit | |
| | | Eric M Gibson | | 3661 | Page 1 of 1 |

**PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | APS | OTHER |
| ☐ | A | 6,047,165 | Apr. 2000 | Wright et al. | 455 | 66 | ☐ | ☐ |
| ☐ | B | | | | | | ☐ | ☐ |
| ☐ | C | | | | | | ☐ | ☐ |
| ☐ | D | | | | | | ☐ | ☐ |
| ☐ | E | | | | | | ☐ | ☐ |
| ☐ | F | | | | | | ☐ | ☐ |
| ☐ | G | | | | | | ☐ | ☐ |
| ☐ | H | | | | | | ☐ | ☐ |
| ☐ | I | | | | | | ☐ | ☐ |
| ☐ | J | | | | | | ☐ | ☐ |
| ☐ | K | | | | | | ☐ | ☐ |
| ☐ | L | | | | | | ☐ | ☐ |
| ☐ | M | | | | | | ☐ | ☐ |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | APS | OTHER |
| ☐ | N | | | | | | | ☐ | ☐ |
| ☐ | O | | | | | | | ☐ | ☐ |
| ☐ | P | | | | | | | ☐ | ☐ |
| ☐ | Q | | | | | | | ☐ | ☐ |
| ☐ | R | | | | | | | ☐ | ☐ |
| ☐ | S | | | | | | | ☐ | ☐ |
| ☐ | T | | | | | | | ☐ | ☐ |

**NON-PATENT DOCUMENTS**

| * | | DOCUMENT (Including Author, Title Date, Source, and Pertinent Pages) | DOCUMENT SOURCE ** | |
|---|---|---|---|---|
| | | | APS | OTHER |
| ☐ | U | | ☐ | ☐ |
| ☐ | V | | ☐ | ☐ |
| ☐ | W | | ☐ | ☐ |
| ☐ | X | | ☐ | ☐ |

*A copy of this reference is not being furnished with this Office action. (See Manual of Patent Examining Procedure, Section 707.05(a).)
**APS encompasses any electronic search i.e. text, image, and Commercial Databases.
U.S. Patent and Trademark Office
PTO-892 (Rev. 03-98)    Notice of References Cited    Part of Paper No. 12

Ex. C - 71