QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Frederick A. Lorig (Bar No. 057645)
  fredericklorig@quinnemanuel.com
  Steven M. Anderson (Bar No. 144014)
  stevenanderson@quinnemanuel.com
  Anthony P. Alden (Bar No. 232220)
  anthonyalden@quinnemanuel.com
  Joseph M. Paunovich (Bar No. 228222)
  joepaunovich@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff and Counter-
Defendant Teledyne Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TELEDYNE TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HONEYWELL INTERNATIONAL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND COUNTERCLAIM | CASE NO. 06-06803-MMM (SHx)<br><br>DECLARATION OF K. PRASAD NAIR IN SUPPORT OF PLAINTIFF AND COUNTER-DEFENDANT TELEDYNE TECHNOLOGIES INCORPORATED'S RESPONSIVE CLAIM CONSTRUCTION BRIEF<br><br>The Honorable Margaret M. Morrow<br><br>Hearing Date: January 28, 2008<br>Time: 9:00 a.m.<br>Courtroom: 780<br><br>Trial Date: Sept. 23, 2008<br>Discovery Cut-off Date: June 6, 2008<br>Pre-trial Conference Date: Aug. 25, 2008 |

## DECLARATION OF K. PRASAD NAIR

I, Prasad Nair, declare as follows:

1. I have personal knowledge of the information contained herein and if called, could testify competently thereto.

2. I am currently the President of Project Management Enterprises, Inc. (PMEI) in Bethesda, Maryland. PMEI provides consulting services to both Federal and State governments and in the private sector (nationally and internationally) in the areas of air-ground communications systems, aircraft maintenance and data retrieval systems, technical standards development, Global Positioning System (GPS) systems, mobile data link systems and telecommunications in the aviation industry, including for ARINC, the Federal Aviation Administration (FAA) and the Radio Technical Commission for Aeronautics (RTCA).

3. I hold a Bachelor of Science in Electrical Engineering from Howard University, a Masters Degree in Engineering Administration from George Washington University, and a Graduate Certificate in Management Information Systems from American University. For more than the last 25 years, I have provided consulting services in aviation related communications, including feasibility studies, systems architecture, requirements analysis, hardware/software selection, database design, request for proposal (RFP) preparation and procurement actions, and project monitoring and management. During this time, I was familiar with data reporting requirements for aircraft operators, the data communications systems in use by aircraft operators, and aeronautical data communications standards.

4. A copy of my resume is attached hereto as Exhibit 1.

5. I have been retained by Plaintiff and Counter-Defendant Teledyne Technologies Incorporated in this case at the hourly rate of $325 per hour. My compensation in this matter is not related to the outcome of this case.

6. I have read the declaration of Chris A. Wargo and I disagree with his contentions regarding the terms "data acquisition unit" and "flight operations center."

7. By July 1998, the FAA had required aircraft operators to collect and record at least 88 different "flight data" parameters as part of "airplane flight recorder specifications" in both dynamic and static conditions. <u>See</u> C.F.R., Title 14, Chapter 1, Subchapter G, Part 121, Appendix M attached as Exhibit I to the declaration of Anthony P. Alden lodged concurrently herewith in support of Teledyne's Responsive Claim Construction Brief. Included among the 88 "flight data" parameters were "engine parameters" such as "vibration level, N2, EGT, Fuel Flow, Fuel Cut-off lever position and N3" and "engine warning" discretes "vibration, temp, low pressure and speed." <u>Id.</u>

8. "Flight data" is typically recorded on a device that is commonly referred to as a "airplane flight recorder," "flight data recorder" or "flight data acquisition unit." However, the aforementioned FAA regulation does not require that an aircraft collect and record "flight data" on any particular device (or using any particular processor), only that aircraft have a device that collects and records the 88 "flight data" parameters. Thus, one of ordinary skill in the Relevant Art at the time the '990 patent was filed would understand that the term "data acquisition unit" as it is used in the '990 patent refers to any hardware device that is capable of acquiring "flight data."

9. At the time the '990 patent was filed, the airlines, aircraft operators and other third parties maintained "flight operations centers." In fact, since 1985 Honeywell's Global Data Center has provided the type of "flight operations center" functions described by Mr. Wargo in his declaration:

| Global Data Center Pre-Flight Services | Global Data Center In-Flight Services |
|---|---|
| • Datalink Communications | • Air Traffic Services |
| • Pre-arranged Fuel | • Navigation Databases |
| • Web Flight Planning | • WINN™ Graphical Weather |
| • Flight Sentinel™ | • JetMapII® |
| • Air Traffic Services | • Onelink™ |
|  | • Graphical Flight Following |

Flight Sentinel Services

- Flight Planning
- Active Flight Monitoring
- Collaborative Decision Making
- Custom Flight Concierge

Attached to this declaration as Exhibit 2 is a printout of a web page from the National Business Aviation Association, Inc. website describing the "flight operations" services of Honeywell and other third parties which are not considered "airlines" or "aircraft operators."  Thus, one of ordinary skill in the Relevant Art at the time the '990 patent was filed (as well as today) would understand that the term "flight operations center" as it is used in the '990 patent refers to the location housing and/or in communication with a data reception unit.

   10. In connection with the preparation of this declaration, I have read U.S. Patent No. 6,181,990 ("the '990 patent"), filed July 30, 1998.  I have also read the prosecution histories of both the original application and the reexamination and the prior art relied upon by the United States Patent Office Examiners.  I have also reviewed and examined the Joint Claim Construction Chart regarding the asserted

1  claims filed by the parties on November 5, 2007. Nothing in any of these
2  documents changes my opinions detailed above.
3
4
5  DATED: December 17, 2007
6                                                              K. Prasad Nair
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28