QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Frederick A. Lorig (Bar No. 057645)
  fredericklorig@quinnemanuel.com
  Steven M. Anderson (Bar No. 144014)
  stevenanderson@quinnemanuel.com
  Anthony P. Alden (Bar No. 232220)
  anthonyalden@quinnemanuel.com
  Joseph M. Paunovich (Bar No. 228222)
  joepaunovich@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Teledyne Technologies Incorporated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TELEDYNE TECHNOLOGIES INCORPORATED, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HONEYWELL INTERNATIONAL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND COUNTERCLAIM | CASE NO. 06-06803-MMM (SHx)<br><br>The Honorable Margaret M. Morrow<br><br>DECLARATION OF DR. R. W. KREUTEL IN SUPPORT OF TELEDYNE'S SUPPLEMENTAL MARKMAN BRIEF<br><br>Trial Date:  Sept. 23, 2008<br>Discovery Cut-off Date: June 6, 2008<br>Pre-trial Conference Date: Aug. 25, 2008 |

# DECLARATION OF DR. R. W. KREUTEL

I, Dr. R. W. Kreutel, declare as follows:

1. I have over 40 years of experience in the satellite communications industry, including an 18 year tenure with Communications Satellite Corp. (COMSAT). I am a founding member of COMSAT Laboratories. I provided technical support to all of the early international communications satellites (INTELSAT), including ITS-I through ITS-V. My support covered both spacecraft and earth-terminal technologies. I provided similar support to MARISAT (the precursor of the INMARSAT system) and to COMSTAR (a U.S. regional, domestic system). Later I became involved in Low/Medium Earth Orbit systems, initially for personal communication, and subsequently for wide-band Internet service to homes and businesses. I am a Fellow of the Institute of Electrical and Electronic Engineers. My Fellow citation refers to my contributions to satellite communications technology. Attached as Exhibit A is my up-to-date resume.

2. In the subsequent paragraphs of this Declaration, I provide definitions of "Direct Broadcast Satellite" and "Aeronautical Satellite" based on the state of the satellite communications business in the 1998-99 timeframe.

3. In the 1979-80 timeframe, COMSAT established a subsidiary company called Satellite Television Corp., and Mr. Stanley S. Hubbard formed U.S. Satellite Broadcasting. These were the initial entries in the satellite television broadcasting industry. The intent was to provide wide-band television direct to the home. But it was not until a dozen or so years later that this proposed service was reduced to practice. The proposed service was referred to as "Direct Broadcast Satellite" ("DBS"). Major participants in DBS were DirectTV and Echostar. As implemented in the 1998-99 timeframe, DBS systems included a return link via a

telephone circuit and a SATCOM earth station in order to provide pay-per-view or TV-on-demand services.

4.      Inherent in the broadband TV broadcasting capability of DBS is the means to provide Internet services with the aforementioned return link serving as the information request link.

5.      A Direct Broadcast Satellite provides point-to-multi-point service.  Broadband video and/or data (e.g., many TV channels or e-mails) are transmitted simultaneously to many users (subscribers).  The users are distributed over a broad area of coverage, e.g., a country or a time zone within a country.  By means of an appropriate selection device, the receiver chooses or filters that part of the transmission designated for the particular subscriber.  For example, as stated earlier, DBS can provide Internet services in which case subscribers can, with appropriate user IDs and passwords, access private email accounts, bank accounts, or the like.

6.      In the 1970s, a joint venture was established between COMSAT and the European Space Agency to develop a dedicated Aeronautical Satellite system.  Such a dedicated system was never developed due to technical and operational difficulties and lack of financial support..

7.      The International Maritime Satellite Organization (INMARSAT) was formed in 1979 to provide mobile satellite service to seagoing platforms.  The INMARSAT charter was subsequently broadened to include both Aeronautical Satellite and Land Mobile Services.  The name of the INMARSAT organization was changed to International Mobile Satellite Organization to reflect the broadened scope of business, but the INMARSAT acronym was maintained.  Aeronautical Satellite services were introduced in the INMARSAT system in 1992.

8. Aeronautical Satellite services consist of two-way air-to-ground and air-to-air telecommunications services for the crew and the passengers of airplanes.

9. In the 1998-99 timeframe, reference to an "Aeronautical Satellite" explicitly refers to an INMARSAT satellite, because INMARSAT was the only satellite provider authorized by regulatory authority to provide Aeronautical Satellite services.

10. In the 1998-99 timeframe, within the accepted nomenclature of the satellite communication business, an "Aeronautical Satellite" would not be considered a "Direct Broadcast Satellite." Nor would a "Direct Broadcast Satellite" be considered a subspecies of an "Aeronautical Satellite." In this time period, "Aeronautical Satellites" and "Direct Broadcast Satellites" were considered distinct and separate types of satellite systems.

11. The following references support the facts in this Declaration:

11.1 Bruno Pattan, Satellite Systems: Principles and Technologies, pp. 218-225 (1993). A true and correct copy of relevant excerpts from this publication is attached as Exhibit B.

11.2 Minutes of Meeting between NASA/NSF and INMARSAT (June 23, 1992). A true and correct copy of these minutes is attached as Exhibit C.

11.3 COMSAT Technical Review, vol. 11, no. 1, p. 195 (Fall 1981) (special issue covering COMSAT's Direct Broadcast Satellite System). A true and correct copy of relevant excerpts from this publication is attached as Exhibit D.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of February, 2008, at Los Angeles, California.

_____
Dr. R. W. Kreutel