Brett Carlson 2/19/2008 12:49:00 PM

1  DISCLAIMER

2

3  THIS REALTIME/ROUGH TEXT IS UNEDITED/UNCERTIFIED AND

4  WILL CONTAIN UNTRANSLATED STENOGRAPHIC SYMBOLS,

5  OCCASIONAL REPORTER NOTES, MISSPELLED PROPER NAMES,

6  AND/OR NONSENSICAL WORD COMBINATIONS. ALL SUCH

7  ENTRIES WILL BE CORRECTED ON THE OFFICIAL CERTIFIED

8  TRANSCRIPT.

9

10  THIS REALTIME/ROUGH TEXT IS FOR THE PURPOSE OF

11  AUGMENTING COUNSEL'S NOTES AND SHALL NOT BE

12  RECOGNIZED AS AN OFFICIAL TRANSCRIPT, NOR SHALL IT BE

13  CITED OR USED IN ANY WAY OR AT ANY TIME TO REBUT OR

14  CONTRADICT THE OFFICIAL CERTIFIED TRANSCRIPT OF THE

15  PROCEEDINGS, PURSUANT TO APPLICABLE COURT RULES.

16

17  REALTIME/ROUGH UNEDITED/UNCERTIFIED TEXT

18          THE VIDEOGRAPHER:  Kayla Camenzind. Good

19  morning, here begins media number 1, in the

20  deposition of Brett A. Carlson, in the matter of

21  Teledyne versus Honeywell. The case is in Central

22  District Court, California. The case number is

23  06-06803. Today's date is February 19th, 2008, the

24  time is 9:38. The deposition is taking place at

25  Snell & Wilmer, 400 East Van Buren, Suite 1900,

EXHIBIT A
Page 2

1  Phoenix, Arizona.

2  This is being taken on behalf of the

3  plaintiffs and counter defendants. The videographer

4  is Kayla Camenzind, appearing on behalf of Sarnoff

5  Court Reporters and Legal Technologies, located in

6  Irvine, California.

7  Would counsel please identify yourselves

8  and state whom you represent, please.

9  MR. PAUNOVICH: Joe Paunovich on behalf

10  of Teledyne Technologies, Incorporated.

11  MR. STARR: Ephrain Starr with Kirkland &

12  Ellis, LLP on behalf of Honeywell International, Inc.

13  and Honeywell Intellectual Properties, Inc.

14  MR. CONDO: Jim Condo and Wendy Neal on

15  behalf of the witness Brett A. Carlson in his

16  individual capacity and as a former member of Snell &

17  Wilmer, LLP.

18  THE VIDEOGRAPHER: Thank you. Madam

19  Court Reporter, would you please swear in the

20  witness.

21

22  THE VIDEOGRAPHER: We are on the record

23  at 9:39 a.m.

24  BY MR. PAUNOVICH:

25  Q. Good morning, Mr. Carlson.

1    A.   Generally, I can't think of a reason why

2    it wouldn't be.

3         MR. PAUNOVICH: Why don't we -- we're on

4    five minutes here, why don't we cut from this and

5    I'll let you know how long it will take.

6         THE VIDEOGRAPHER: Okay. This ends tape

7    six of the videotaped deposition of Brett Carlson.

8    We're off the record at 5:47 p.m.

9         (Recessed from ** until **.)

10        THE VIDEOGRAPHER: This is media number

11   seven of the videotaped deposition of Brett Carlson,

12   we're back on the record at 5:55 p.m.

13   BY MR. PAUNOVICH:

14        Q.   Mr. Carlson, can you tell me if the

15   phrase system server has any specific meaning to you?

16        MR. STARR: Objection, calls for opinion

17   testimony.

18        THE WITNESS: I think we've discussed

19   this before, it doesn't have any special meaning to

20   me.

21        Q.   Does it have any general meaning to you?

22        MR. STARR: Objection, calls for opinion

23   testimony.

24        THE WITNESS: I'm not sure. Again, I'm

25   not a linguist, it doesn't have any, I can't give you

Brett Carlson 2/19/2008 12:49:00 PM

1  a definition, I haven't thought about what those

2  words would be declined.

3     Q. The phrase appears in the '468 patent,

4  correct?

5     A. It may.

6     Q. Do you know what it means in the context

7  of that patent?

8     A.

9        MR. STARR: Objection, calls for opinion

10 testimony.

11       THE WITNESS: No, I don't.

12 BY MR. PAUNOVICH:

13    Q. And in your background, training tan

14 experience as a patent attorney, could you ascribe

15 any meaning to it by looking at the term as it

16 appears in the context of the claims and the

17 specification and the prosecution history?

18    A. I don't know, it would be defined by

19 somebody skilled in the art, which I'm not, and to

20 the extent I had particular knowledge when I wrote

21 this, that was seven, eight years ago, and I just

22 don't remember it.

23    Q. So a lay person wouldn't be able to

24 understand what the meaning of the phrase is?

25       MR. STARR: Objection,

1  mischaracterization test prior testimony.

2       THE WITNESS: No, it would be, it would

3  be interpreted by a person of skill in the art, which

4  I'm not.

5       Q. So it would not be able to to be

6  understood by a lay person?

7       MR. STARR: Objection, mischaracterizes

8  prior testimony.

9       A. It would be interpreted by a person of

10  skill in the art.

11      Q. Is a person of skill in the part a

12  layperson?

13      A. I don't know.

14      Q. What do you understand a person of skill

15  in the art to be?

16      MR. STARR: Objection; lacks foundation.

17      A. I'm not sure I'm prepared to say what a

18  person skilled in the art is or I don't know what you

19  mean by a layperson.

20      Q. Well, you just testified that it would be

21  understood by a person skilled in the art, so what

22  did you mean when you said that?

23      A. A person skilled in the art is a -- is a

24  term of art in interpreting -- in patent

25  interpretation.

Brett Carlson 2/19/2008 12:49:00 PM

1  the question, please.

2  (Record read).

3  THE WITNESS: Give me just --

4  BY MR. PAUNOVICH:

5  Q. In other words, do both terms appear in

6  the claims?

7  A. Okay.

8  A. Give me just a minute to take a look.

9  Q. And just so you have context, because my

10  follow up question will be, are there any claims

11  where both terms appear in the same claim?

12  A. Okay.

13  MR. STARR: Was --

14  MR. PAUNOVICH: In other words, there

15  could be one claim that has one term and an entirely

16  separate claim that has the other term but I want to

17  knows are there claims of the patent that include

18  both terms.

19  A. Both component and vehicle server.

20  Q. Yeah, as separate words?

21  A. Okay. Give me just a minute.

22  MR. STARR: While he's reviewing that,

23  I'll just object that the document speaks for itself.

24  THE WITNESS: I see the words vehicle

25  server in Claim 1. I see the word vehicle server in

1   claim nine.

2      Q.  Does the word component appear in Claim 1

3   as well, third element?

4      A.  Yeah, I do see the word there, yes.

5      Q.  Are you familiar with the doctrine that

6   all words in a claim are presumed to have some

7   meaning?

8      A.  I'm familiar with the doctrine, I don't

9   know the legal details of it, but I'm familiar with

10  the doctrine along that line, yes.

11     Q.  Do you have any understanding as to what

12  that doctrine holds?

13     A.  Again, I haven't done the research, but

14  basically what you've said there's a doctrine along

15  the lines lines of the words in the claim are

16  important.

17     Q.  And different words are resumed to have

18  different meanings?

19     A.  Without more research, I don't know the

20  extent of it.

21     Q.  What does the phrase outside of the

22  context of the patent, not construing the claims,

23  nothing to do with the '468, what does the phrase

24  data connection mean to you?

25         MR. STARR:  Objection, calls for opinion

1  testimony.

2  THE WITNESS: I'm -- subject to the

3  things we've discussed before, I'm not an expert or a

4  linguist.

5  Q. Right.

6  A. The phrase data connection could refer to

7  any number of things.

8  Q. Does it have any, what would it mean to

9  you in the -- in a computer context?

10  MR. STARR: Calls for opinion testimony.

11  THE WITNESS: Just thinking quickly off

12  the top of my head, in a computer context, speaking

13  as a nonexpert, a data connection could be anything

14  that, you know, any network or -- network or link or

15  other type of connection between -- between things

16  that are able to communicate.

17  Q. The word communicate, what does that word

18  mean to you in a computer context?

19  A. It's something I said fairly quickly

20  without a lot of thought, but generally speaking,

21  communicate would imply transmitting or receiving

22  information or data.

23  Q. Capable of doing that?

24  A. To communicate, to communicate you'd have

25  to be capable of doing that, I'm not sure I

Brett Carlson 2/19/2008 12:49:00 PM

1   understand what you're asking.

2       Q. Yeah, maybe that was a bad question. You

3   said capable of transmitting or receiving information

4   or excuse me not capable, transmitting or receiving

5   information would be communicating?

6       A. That would be one form of communicating,

7   yes.

8       Q. And I don't know, I'm assuming that's

9   between two points or in what context is it?

10      A. I would imagine it would be in varying

11  contexts, off the top of my head I can think of

12  between people, between points, between processes in

13  a computer system.

14      Q. Okay?

15      A. In a network.

16      Q. This one may get a little bit more tricky

17  in trying to remove ourselves from the contention of

18  the '468 patent, but is there -- is there any

19  meaning, or what meaning would you put to the phrase

20  load a data update in a computer context?

21      MR. STARR: Objection, calls for opinion

22  testimony.

23      THE WITNESS: I'm not sure I can give you

24  more meaning than what the words just said.

25  BY MR. PAUNOVICH:

1  Q. Does the word load -- are there any
2  specific steps that are associated with a loading
3  step in a computer context?
4  A. Yeah, I'm just not sure.
5  Q. Do you have any background in loading
6  things, or any experience in loading things on
7  computers?
8  A. Yeah. I've at times in my past have done
9  things that could be construed task loading.
10 Q. And what would you, what sort of things
11 have you done in your past?
12 A. Loading a program onto a computer, in the
13 sense of downloading something from a website or off
14 of is a disk or whatever it is, putting a program
15 onto a computer.
16 Q. What was involved in loading a program on
17 to a computer in one of the instances in your past?
18 A. I can tell you, I mean, recently I
19 purchased a software program for a computer at home,
20 it came on a CD-ROM, in this particular instance I
21 put the CD-ROM into the computer and it, and it ran
22 an installer program that installed the program.
23 Q. Do you know what was involved in running
24 the install learn program?
25 A. I don't know. A lot of that is automated

1  and behind the scenes, so I don't know what is

2  involved in that.

3     Q.  Would it be fair to say that the computer

4  was processing the information?

5     A.  I believe that it was, yes.

6     Q.  And would it be fair to say that it was,

7  it would have had to safe the information in order to

8  load it?

9     MR. STARR:  Objection, calls for opinion

10  testimony.

11     THE WITNESS:  I'm not sure.  In this

12  particular example of me load ago program onto my

13  personal computer, I believe that the computer would

14  have saved it in this case onto a hard drive.

15     Q.  Okay.  Can a vehicle server be a

16  computer, in your opinion?

17     MR. STARR:  Objection, calls for opinion

18  testimony, lacks foundation.

19     THE WITNESS:  I don't remember.  I don't

20  remember what was meant by vehicle server, in

21  particular.

22  BY MR. PAUNOVICH:

23     Q.  Outside of the context of the patent, a

24  server, I believe I heard you testify, can be a

25  computer, though, is that correct?

1   that leaps into my mind is just it's able to, able to

2   execute the method.

3       Q.  Including each one of the steps of the

4   method?

5       MR. STARR:  Objection; calls for opinion

6   testimony.

7       THE WITNESS:  I don't remember exactly

8   what you asked, but you said operable to execute the

9   method.

10      Q.  Sure.  Let's paint the picture, so to

11  speak?

12      A.  Okay.

13      Q.  We've got a four step go get paint

14  bucket, go get paint, pour paint in bucket, paint

15  wall, that's the method, open and close.

16      A.  Okay.

17      Q.  And I invent a robot that is operable to

18  execute that method that I've just described, and I

19  believe what you just testified is that operable to

20  execute the method would be that it could perform or

21  execute the method.  We kind of just used the same

22  terms that just defined it.  My question -- pending

23  question was whether or not that means that that

24  robot had to perform each one of the steps for the

25  method.

1       MR. STARR: Objection; incomplete

2   hypothetical, calls for opinion testimony.

3       THE WITNESS: I mean, just as I

4   understand the hypothetical, if we say something is

5   operable to execute the method, and we define method

6   as having certain steps, it would seem logical that

7   the, that the way we defined it that operable to

8   execute the method would be the method according to

9   that definition.

10      Q. Okay. Do you have any understanding what

11  the term -- what the phrase predetermined time

12  means?

13      MR. STARR: Objection, calls --

14      MR. PAUNOVICH: Generally speaking.

15      MR. STARR: Objection, lacks foundation,

16  calls for expert testimony.

17      THE WITNESS: Generally speaking, I don't

18  have any.

19      Q. There's a couple of documents that were

20  produced to Teledyne by Snell that were in the

21  prosecution history or the file history for the '152

22  path department, I know we haven't talked about that

23  at all today?

24      A. Okay.

25      Q. I just want to you take a quick look at